1    **WO**

2

3

4

5

6                    IN  THE  UNITED  STATES  DISTRICT  COURT

7                      FOR  THE  DISTRICT  OF  ARIZONA

8

9    James M. Washington, Jr.,    )   Civ. No. 06-0685-PHX-SMM  (VAM)
                                  )
10           Petitioner,          )   **REPORT AND RECOMMENDATION**
                                  )
11   vs.                          )
                                  )
12                                )
     Dora B. Schriro, et. al.,    )
13                                )
             Respondents.         )
14                                )
                                  )
15   _____  )

16   **TO THE HONORABLE STEPHEN M. MCNAMEE, UNITED STATES DISTRICT**

17   **JUDGE:**

18     Petitioner  filed  a  federal  Petition  for  Writ  of  Habeas

19   Corpus pursuant to 28 U.S.C. § 2254 on March 9, 2006. [Doc.

20   1]. Respondents' Answer was filed on August 29, 2006. [Doc.

21   16].  Respondents' Exhibits were received on August 31, 2006.

22   [Doc. 18].  Petitioner requested an extension of time to file

23   a Reply.  [Doc. 23].  This Court granted Petitioner's request

24   in part, extending the deadline until October 20, 2006.  [Doc.

25   24].   No Reply was  forthcoming  during  the  allowable  time

26   period.  Petitioner's motion for reconsideration was denied on

27   November 1, 2006.  [Doc. 28].

28     The Court now reports and recommends as follows:

**BACKGROUND**

On October 18, 1994, Petitioner was charged by amended indictment with second degree murder, in violation of A.R.S. §13-1104(A). [Doc. 18, Exh. C]. The charges arose out of a series of events during which Petitioner and several companions confronted the victim and several of the victim's companions. [See Doc. 18, Exh. Z]. These confrontations ultimately culminated in a street fight. [Id.]. During the fight, Petitioner was struck in the head by a beer bottle thrown by one of the victim's companions. [Id.]. Also during the fight, Petitioner fired between two and four gun shots at the victim. [Id.]. The victim was fatally wounded. [Id.].[1]

Petitioner's case proceeded to trial three times. Petitioner was first convicted of second-degree murder on October 31, 1994. [Doc. 18, Exh. D]. The conviction was subsequently vacated on grounds that the State failed to disclose information in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963)(holding that due process requires disclosure of favorable, material evidence). A second jury convicted Petitioner of second-degree murder on March 6, 1995. [Doc. 18, Exh. G]. The conviction was reversed on appeal, however, due to juror misconduct. [See Doc. 18, Exh. Z at 2]. Petitioner's third and final jury trial resulted in a

---

[1]     Issues in dispute at trial included: the number of shots fired, whether the bottles were thrown before the shots were fired or vice versa, whether the defendant acted in self-defense, whether anyone else fired shots at the victim, and whether gang activity was involved.

1    conviction of second-degree murder that was affirmed on

2    appeal. [Doc. 18, Exh. X at 28].

3      On direct appeal from his final trial, Petitioner argued

4    that the State violated Brady by: failing to disclose evidence

5    relating to a witness in Petitioner's first trial, Sharmaine

6    Amparano; failing to disclose a prosecutorial agreement with

7    witness Tyrone Montgomery; and failing to disclose evidence of

8    two "flare marks" discovered on Petitioner's gun.  [Doc. 18,

9    Exh. Y at 4-41]. Petitioner further alleged that the State was

10   improperly permitted to impeach him with testimony from his

11   second trial.   [Id.]. Finally, Petitioner asserted the

12   prosecutor misstated the law, misstated the facts, and engaged

13   in improper vouching. [Id. at 42-57]. The Arizona Court of

14   Appeals affirmed. [Doc. 18, Exh. Z].   The Arizona Supreme

15   Court denied review. [Doc. 18, Exh. AA].

16     Petitioner filed a Notice of Post-Conviction Relief on

17   December 8, 2000. [Doc. 18, Exh. BB].   He filed his state

18   Petition for Post-Conviction Relief on September 10, 2001.

19   [Doc. 18, Exh. CC].   In his Petition, Petitioner alleged

20   various instances of ineffective assistance of trial counsel,

21   ineffective assistance of appellate counsel, and prosecutorial

22   misconduct. [Doc. 18, Exh. CC].

23     The Superior Court denied each of Petitioner's claims, with

24   the exception of Petitioner's claim that trial counsel failed

25   to effectively communicate a plea offer. [Doc. 18, Exh. EE].

26   Following an evidentiary hearing, the Court denied this claim

27   as well.   [Doc. 18, Exh. GG].   The Arizona Court of Appeals

28

1 | denied review. [Doc. 18, Exh. HH].   Petitioner's federal
2 | habeas corpus petition followed. [Doc. 1].

3 | **LEGAL STANDARDS**

4 | **A. Anti-Terrorism and Effective Death Penalty Act of 1996**

5 | On April 24, 1996, President Clinton signed into law the

6 | Anti-Terrorism and Effective Death Penalty Act ("the Act"),

7 | Pub.L. 104-132, 110 Stat. 1214.   Pursuant to 28 U.S.C. §

8 | 2254(d), as amended by the pertinent provisions of the Act,

9 | the following standard for granting a federal habeas petition

10 | originating from a state court conviction was established:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable interpretation of the facts in light of the
> evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The Act also codifies a presumption of correctness of state court findings of fact.   28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."   As discussed more fully below, these provisions of the Act set the standard for the Court's evaluation of the merits of the petition.

1    The Act limits the district court's discretion to hold

2  evidentiary hearings.  28 U.S.C. § 2254(e)(2) states:

3      If the applicant has failed to develop the factual basis
       of a claim in State court proceedings, the court shall not
4      hold an evidentiary hearing on the claim unless the
       applicant shows that--
5
       (A) the claim relies on--
6
       (i) a new rule of constitutional law, made retroactive to
7      cases on collateral review by the Supreme Court that was
       previously unavailable; or
8
       (ii) a factual predicate that could not have been
9      previously discovered through the exercise of due
       diligence; and
10
       (B) the facts underlying the claim would be sufficient to
11     establish by clear and convincing evidence that but for
       constitutional error, no reasonable factfinder would have
12     found the applicant guilty of the underlying offense.

13  Finally, the Act provides that a petition may be denied on

14 the merits even though it contains unexhausted claims,[2] and

15 that the state does not waive exhaustion except by an express

16 waiver on the record.[3] 28 U.S.C. § 2254(b)(2),(3).

17   In <u>Felker v. Turpin</u>, 518 U.S. 651 (1996), the Supreme Court

18 upheld the constitutionality of several sections of the new

19 Act.  The Court found that the Act does not repeal the Court's

20 authority to entertain original habeas petitions or violate

---

[2]    This appears to be merely a codification of the holding
       in <u>Granberry v. Greer</u>, 481 U.S. 129 (1987), which allowed
       an appellate court to review unexhausted claim (where the
       state failed to raise exhaustion at the district court
       level) rather than returning them to state court if they
       were patently not colorable.

[3]    This provision changes the prior rule in the Ninth
       Circuit that a state's failure to raise exhaustion in the
       district court waives the issue at the court of appeals.
       See <u>Brown v. Maass</u>, 11 F.3d 914 (9th Cir. 1993)(per
       curiam).

1 the Constitution's Exceptions and Suspension Clauses, but does
2 affect the standard for granting relief. Id. at 654.

3 **B. Exhaustion and Procedural Default**

4 A federal court has authority to review a federal
5 constitutional claim presented by a state prisoner if
6 available state remedies have been exhausted. Duckworth v.
7 Serrano, 454 U.S. 1, 3 (1981)(per curiam); McQueary v.
8 Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). The exhaustion
9 doctrine, first developed in case law and codified in the
10 former 28 U.S.C. § 2254, now states:

11    (b)(1) An application for a writ of habeas corpus on
   behalf of a person in custody pursuant to the judgment of
12    a State court shall not be granted unless it appears that-
   -
13
14     (A) the applicant has exhausted the remedies available
   in the courts of the State; or

15     (B)(i) there is an absence of available state corrective
   process; or
16
17     (ii) circumstances exist that render such process
   ineffective to protect the rights of the applicant.

18        . . . . . . .

19    (c) An applicant shall not be deemed to have exhausted the
   remedies available in the courts of the State, within the
20    meaning of this section, if he has the right under the law
   of the State to raise, by any available procedure, the
21    question presented.

22 28 U.S.C. § 2254 (1996).

23 The exhaustion requirement can be satisfied in one of two
24 ways. First, a petitioner can fairly present his or her
25 claims to the state's highest court by properly pursuing them
26 through either the state's direct appeal process or through
27 appropriate post-conviction relief. Rose v. Lundy, 455 U.S.
28

-6-

1  509 (1982); Lindquist v. Gardner, 770 F.2d 876, 877 (9th Cir.
2  1985); Sweet v. Cupp, 640 F.2d 233, 235 (9th Cir. 1981).  Only
3  one of these avenues of relief must be exhausted before
4  bringing a habeas petition in federal court.  This is true
5  even where alternative avenues of reviewing constitutional
6  issues are still available in state court.  Brown v. Easter,
7  68 F.3d 1209, 1211 (9th Cir. 1995); Turner v. Compoy, 827 F.2d
8  526, 528 (9th Cir. 1987).

9  A petitioner must "fairly present his claim to the state's
10  highest court to properly exhaust."  Brown, 68 F.3d at 1211.[4]
11  Although a federal habeas petitioner may reformulate somewhat
12  the claims made in state court, the substance of the federal
13  claim must have been "fairly presented" in state court.
14  Anderson v. Harless, 459 U.S. 4, 6 (1982)(per curiam); Picard
15  v. O'Connor, 404 U.S. 270, 278 (1971).  While the petitioner
16  need not recite "'book and verse of the federal
17  constitution'", Picard, 404 U.S. at 277-78 (quoting Daugharty
18  v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)), it is not
19  enough that all the facts necessary to support the federal
20  claim were before the state courts or that a "somewhat similar
21  state law claim was made."  Anderson, 459 U.S. at 6.

22
23

24  [4]   In Arizona, exhaustion may be accomplished by fairly
      presenting claims to the Arizona Court of Appeals.
25    Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir.
      1999), cert. denied, 529 U.S. 1124 (2000) (stating
26    that "except in habeas petitions in capital cases,
      claims of Arizona state prisoners are exhausted for
27    purposes of federal habeas once the Arizona Court of
28    Appeals has ruled on them").

1   As an alternative to presenting his claims to the highest
2   state court, a petitioner can satisfy the exhaustion
3   requirement by demonstrating that no state remedies remained
4   available at the time the federal habeas petition was filed.
5   Engle v. Isaac, 456 U.S. 107, 125 (n. 28)(1982); White v.
6   Lewis, 874 F.2d 599, 602 (9th Cir. 1989). However, this path
7   is fraught with danger:

8       If state remedies are not available because the petitioner
        failed to comply with state procedures and thereby
9       prevented the highest state court from reaching the merits
        of his claim, then a federal court may refuse to reach the
10      merits of that claim as a matter of comity.

11  Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988). This
12  failure to comply with reasonable state procedures is usually
13  characterized as "procedural default", "procedural bar", or a
14  "waiver". As discussed, exhausting state remedies by means of
15  a procedural default is risky. The burden is on the
16  petitioner to show that he or she has properly exhausted each
17  claim. Dismissal of the petition is proper when the record
18  does not show that the exhaustion requirement is met.
19  Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981)(per
20  curiam). The state remedies which must be exhausted are only
21  those which remain available at the time a federal habeas
22  petition is filed. Id. If the unavailability of state
23  remedies is in no way the fault of the petitioner or his or
24  her counsel, the exhaustion requirement will likely be
25  satisfied and a federal court may reach the merits of the
26  petitioner's habeas claim.

27
28

1    In many cases, however, the lack of available state remedies
2    is a direct result of the petitioner's failure to avail
3    himself of the state remedies in a timely or procedurally
4    correct manner.   In such instances, the petitioner has
5    procedurally defaulted, and may not obtain federal habeas
6    review of that claim absent a showing of "cause and prejudice"
7    sufficient to excuse the default.[5]  Reed v. Ross, 468 U.S. 1,
8    11 (1984); Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977); see
9    also Teague v. Lane, 489 U.S. 288, 298 (1989); Tacho v.
10   Martinez, 862 F.2d 1376, 1380 (9th Cir. 1988). "Cause" is the
11   legitimate excuse for the default. Thomas v. Lewis, 945 F.2d
12   1119, 1123 (9th Cir. 1991).   "Prejudice" is actual harm
13   resulting from the alleged constitutional violation.  Id.

14       "Because of the wide variety of contexts in which a
15   procedural default can occur, the Supreme Court 'has not given
16   the term "cause" precise content.'" Harmon v. Barton, 894 F.2d
17   1268, 1274 (11th Cir.)(quoting Reed, 468 U.S. at 13).   The
18   Supreme Court has suggested, however, that cause should
19   ordinarily turn on some objective factor external to
20   petitioner, for instance:

21       ... a showing that the factual or legal basis for a claim
         was not reasonably available to counsel, or that 'some
22       interference by officials', made compliance impracticable,
         would constitute cause under this standard.
23
     Murray v. Carrier, 477 U.S. 478, 488 (1986)(citations
24
     omitted); see also Harmon, 894 F.2d at 1275; Allen v. Risley,
25

26

27       [5]   Appellate defaults are examined under the same standards
             that apply when a defendant fails to preserve a claim
28           during trial.  Smith v. Murray, 477 U.S. 527, 533 (1986).

-9-

817 F.2d 68, 69 (9th Cir. 1987). The standard is one of discretion intended to be flexible and yielding to exceptional circumstances. <u>Hughes v. Idaho State Board of Corrections</u>, 800 F.2d 905, 909 (9th Cir. 1986). The "cause and prejudice" standard is equally applicable to <u>pro se</u> litigants, <u>Harmon</u>, 894 F.2d at 1274; <u>Hughes</u>, 800 F.2d at 908, whether literate and assisted by "jailhouse lawyers", <u>Tacho</u>, 862 F.2d at 1381; illiterate and unaided, <u>Hughes</u>, 800 F.2d at 908, or non-English speaking. <u>Vasquez v. Lockhart</u>, 867 F.2d 1056, 1058 (9th Cir. 1988).

Finally, failure to establish cause may be excused under exceptional circumstances. For instance:

> ... in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of showing cause for the procedural default.

<u>Murray</u>, 477 U.S. at 496.

It is undisputed that Petitioner's federal habeas corpus claims were properly exhausted in state court. The record supports a finding of exhaustion with respect to each of Petitioner's grounds for relief. Therefore, the Court will address the substance of Petitioner's claims in accordance with the AEDPA, 28 U.S.C. § 2254(d).

### DISCUSSION

**A. Brady Violations (Grounds I, II, and III)**

Petitioner's first, second, and third grounds for relief allege that the state improperly withheld information in violation of Petitioner's Fifth, Sixth, and Fourteenth

1  Amendment Rights.   [Doc. 1].   Specifically, he asserts that
2  the  State  failed  to  disclose:  evidence  relating  to  a
3  prosecutorial agreement with a material witness (Ground I);
4  impeachment evidence relating to the testimony of Shamaine
5  Amparano, a witness in Petitioner's first trial (Ground II);
6  and notes of the State's criminalist relating to "flare marks"
7  on the gun used by Petitioner in perpetration of the crime
8  (Ground III). [Id.]

9    In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United
10 States Supreme Court held that "suppression by the prosecution
11 of evidence favorable to an accused upon request violates due
12 process where the evidence is material either to guilt or to
13 punishment, irrespective of the good faith or bad faith of the
14 prosecution." See also United States v. Bagley, 473 U.S. 667,
15 682 (1985); United States v. Agurs, 427 U.S. 97, 110 (1976).
16 Pursuant to Brady, undisclosed evidence "is material only if
17 there is a reasonable probability that, had the evidence been
18 disclosed to the defense, the result of the proceeding would
19 have  been  different."  Bagley,  473  U.S.  at  682;  accord
20 Strickler v. Greene, 527 U.S. 263, 281 (1999);   Silva v.
21 Brown, 416 F.3d 980, 986 (2005); Horton v. Mayle, 408 F.3d
22 570, 578 (9th Cir. 2005).  "A 'reasonable probability' is a
23 probability  sufficient  to  undermine  confidence  in  the
24 outcome."  Bagley, 473 U.S. at 682.  In assessing whether a
25 constitutional  violation  has  occurred  as  a  result  of
26 prosecutorial non-disclosure, the Court must consider the
27 cumulative effect of all the suppressed evidence.   Kyles v.
28

1  Whitely, 514 U.S. 419, 436, 440 (1995).

2    In this case, the Arizona Court of Appeals expressly

3  assessed Petitioner's Brady claims pursuant to the relevant

4  constitutional standards.  The Court explained, "due process

5  requires the state to timely disclose evidence material to the

6  guilt or punishment of the defendant." [Doc. 18, Exh. Z at 3

7  (citing Brady, 373 U.S. at 87)].  The Court further recognized

8  that a new trial is warranted when the State's non-disclosure

9  results in suppression of material exculpatory or impeachment

10  evidence. [Id. (citing Bagley, 473 U.S. at 676; Agurs, 427

11  U.S. at 107)].  The Arizona Court of Appeals found, however,

12  that none of Petitioner's claims satisfied the requirements of

13  Brady. [Id. at 5-8].  For the reasons that follow, this Court

14  is satisfied that the Arizona Court of Appeals' decision was

15  neither contrary to nor an unreasonable application of federal

16  law.

17    **1. Evidence Relating to Tyrone Montgomery (Ground I)**

18    Petitioner's first habeas claim alleges that the prosecutor

19  failed to disclose an agreement between the State and a

20  material witness, Tyrone Montgomery.  [Doc. 1].  Petitioner

21  claims, and the record reflects, that the prosecutor in

22  Petitioner's third trial denied that the State entered into

23  any agreements with Montgomery in exchange for his testimony.

24  [Doc. 18, Exh. Q at 8, 10, 15, 16, 17, 22].  Petitioner

25  subsequently produced an unsigned letter, apparently written

26  by a different prosecutor, offering to dismiss a probation

27  violation against Montgomery in exchange for information about

28  the shooting (hereinafter "Montgomery letter"). [Id. at 3-23].

1  Petitioner's counsel stated that he discovered the Montgomery
2  letter in his "massive" file.  [Id. at 18].  The prosecutor
3  responded that he had no personal knowledge of the Montgomery
4  letter, but conceded that an offer was obviously extended.
5  [Id. at 15-17].

6      Pursuant to defense counsel's request, the trial court
7  agreed to admit transcripts of Montgomery's prior interviews
8  and testimony and allowed defense counsel to cross-examine
9  Montgomery. [Id. at 21-32; Doc. 18, Exh. Z at 5].  Montgomery
10 testified that his "deal" with the State did not require
11 testimony against anyone in particular, but instead provided
12 that he would testify about what he saw. [Doc. 18, Exh. Q at
13 82-84; Doc. 18, Exh. Z at 5].  Petitioner was convicted.

14     On direct appeal, Petitioner alleged a Brady violation.
15 [Doc. 18, Exh. Z].  The Arizona Court of Appeals rejected his
16 claim on grounds that Petitioner possessed the Montgomery
17 letter, cross-examined Montgomery, and was permitted to place
18 Montgomery's prior statements into evidence. [Id. at 5].  The
19 Court further held that Petitioner failed to establish any
20 prejudice resulting from the belated discovery of the
21 Montgomery letter. [Exh. Z at 5].

22     The Arizona Court of Appeals' decision is consistent with
23 federal law.  Brady contemplates a failure to provide the
24 defendant with material information.  See Brady, 373 U.S. at
25 87; Agurs, 427 U.S. at 108-113; Bagley, 473 U.S. at 682.
26 Here, the Court of Appeals correctly observed that
27 Petitioner's possession of the Montgomery letter evidenced
28 disclosure.  [Exh. Z].  Moreover, even assuming that the

1  suppression requirement of <u>Brady</u> could be satisfied by the

2  prosecutor's initial representation that no agreement existed,

3  there is no reasonable probability that the outcome of the

4  trial would have been different had the defense learned of the

5  Montgomery letter more quickly.  Petitioner's constitutional

6  rights were safeguarded by the trial court's decision to

7  permit the defense to present evidence and cross-examine

8  Montgomery.

9  **2. Evidence Relating to Sharmaine Amparano (Ground II)**

10  Similarly, the Arizona Court of Appeals' rejection of

11  Petitioner's second habeas claim is consistent with federal

12  law.   In Ground II, Petitioner alleges that the State

13  unconstitutionally failed to disclose impeachment evidence

14  relating to Sharmaine Amparano, a witness who testified in

15  Petitioner's first trial.   [Doc. 1].   At the close of

16  Petitioner's first trial, the court granted a new trial on

17  grounds that the State improperly suppressed evidence that may

18  have caused jurors to disbelieve the testimony of Ms.

19  Amparano.   [Doc. 18, Exh. Z at 3-4].   Ms. Amparano was not

20  called as a witness in Petitioner's third trial.

21  On direct appeal from Petitioner's final trial, Petitioner

22  alleged that his constitutional rights were violated by the

23  earlier suppression of Ms. Amparano's testimony.   The Arizona

24  Court of Appeals' rejected Petitioner's claim, holding that

25  any violation was previously remedied by the grant of a new

26  trial.   [<u>Id.</u> at 4].

27  The Court of Appeals' decision is not contrary to or an

28  unreasonable application of federal law.   The constitutional

violation that allegedly occurred in Petitioner's first trial was recognized and remedied by the trial court. Petitioner subsequently had the benefit of two additional trials, during which he had access to the previously undisclosed information. The prosecutor did not recall Ms. Amparano as a witness in either trial. Petitioner's subsequent trials afforded Petitioner due process and safeguarded his right to a fair trial as contemplated by Brady. See Brady, 373 U.S. at 86-87 (discussing relationship between non-disclosure and the right to a fair trial); Bagley, 473 U.S. at 675 (recognizing that Brady ensures "that a miscarriage of justice does not occur"); Agurs, 427 U.S. at 108 (emphasizing that Brady protects right to a fair trial). See also Monroe v. Blackburn, 476 U.S. 1145, 1150-51 (1986)(Marshall, J, dissenting)(recognizing retrial as a traditional remedy for a Brady violation); United States v. Lewis, 368 F.3d 1102, 1107 (9th Cir. 2004)(holding that a second trial is an appropriate remedy under Brady)(citing United States v. Davis, 578 F.2d 277, 280 (10th Cir. 1978)); Monroe v. Angelone, 323 F.3d 286, 293 n. 5 (4th Cir. 2003)(stating that "a Brady violation usually entitles a defendant to a new trial"); U.S. v. Presser, 844 F.2d 1275, 1286 (6th Cir. 1988)(recognizing that "the decisions which have construed the Brady doctrine make it absolutely clear that the remedy for a Brady violation is a new trial...").

### 3. Evidence Relating to the Flare Marks (Ground III)

In his third habeas claim, Petitioner alleges that the State failed to inform him that the State's criminalist discovered

1  two fresh "flare marks"[6] on Petitioner's gun.  [Doc. 1].  The
2  criminalist's official report made no mention of flare marks.
3  However, notes requested and obtained by the defense before
4  Petitioner's third trial revealed that the criminalist had
5  observed, but did not report, the flare marks.  [Doc. 18, Exh.
6  Z at 5-8].

7     Petitioner claims that the number of flare marks on the gun
8  is indicative of the number of times it was fired.  Petitioner
9  asserts that evidence of the number of shots fired is
10 significant because it affected his testimony throughout the
11 state court proceedings.  It appears that one of Petitioner's
12 defenses at trial was that he only fired twice and since
13 witnesses stated that there were more than two shots fired,
14 someone other than Petitioner may have shot the victim.

15    After his arrest, Petitioner reported that he fired two
16 shots.  [See Doc. 18, Exh. Z].  In his second trial, however,
17 he testified that he fired four shots.  [Id.]  In his third
18 trial, Petitioner again claimed that he fired two shots; the
19 prosecution impeached him with his prior testimony.  [Id.].
20 Petitioner maintains that he would not have been required to
21 make inconsistent statements had he known about the
22 criminalist's observation of two flare marks.

23    Petitioner raised this issue on direct appeal to the Arizona
24 Court of Appeals.  He asserted that he gave testimony contrary

25

26    [6]    "A flare mark is a deposit of carbon and soot on the
27         front of the cylinder from the incomplete combustion
           of the gunpowder within the cartridge."  [Doc. 18,
28         Exh. Z at 5].

- 16 -

1   to his recollection after defense counsel advised him that the
2   jury might disbelieve him because the witness' testimony
3   contradicted his version of the events.  [Id.].  He further
4   asserted that he would not have changed his story had he known
5   that there were only two flare marks on the gun because the
6   flare marks supported his story.  [Id.].  Petitioner argued
7   that he suffered prejudice because, absent his prior false
8   statements regarding the number of shots fired, the State
9   would not have been able to impeach him during his third
10  trial.  [Id.]

11      The Arizona Court of Appeals rejected Petitioner's claim.
12  [Id.].   The Court held that no Brady violation occurred
13  because Petitioner learned of the flare marks before his third
14  trial and presented evidence to the jury.  [Id.].  The Court
15  observed that Petitioner called a firearms expert who
16  testified that the flare marks indicated the weapon was fired
17  only twice.  [Id.].  Upon further questioning, however, the
18  expert acknowledged that flare marks could be rubbed off.
19  [Id.].  Further, the state's criminalist testified that the
20  flare marks indicated that the gun had been fired at least
21  twice.  [Id.].  Thus, the jury rejected Petitioner's claim
22  only after the issue was developed at trial.

23      In addition, the Court of Appeals held that Petitioner's
24  decision to testify falsely in his second trial could not "be
25  blamed on the absence of [the flare mark] evidence."  [Id. at
26  7].  The Court noted that the State was entitled to impeach
27  Petitioner and that Petitioner had the opportunity to explain
28  any discrepancies.  [Id.].

The Court of Appeals' decision comports with federal law. As explained above in connection with Petitioner's first habeas claim, non-disclosure is a key element of a <u>Brady</u> violation. <u>See</u> <u>Brady</u>, 373 U.S. at 87; <u>Agurs</u>, 427 U.S. at 108-113; <u>Bagley</u>, 473 U.S. at 682. Here, Petitioner obtained the flare mark evidence prior to the conclusion of his third and final trial. He advanced his theory of the case, presented evidence, and suggested that the state had inappropriately hidden information about the flare marks. Even if the flare mark evidence was arguably suppressed, there is no reasonable probability that the outcome of the trial would have been different had the State disclosed the criminalist's notes prior to Petitioner's request. The record instead reflects that Petitioner received a fair trial as guaranteed by <u>Brady</u>. <u>See</u> <u>Brady</u>, 373 U.S. at 87.

**4.  Cumulative effect**

Finally, the Court observes that nothing in the record would support a finding that the alleged <u>Brady</u> errors cumulatively deprived Petitioner of a fair trial. Petitioner was admittedly aware of all the allegedly suppressed evidence prior to the conclusion of his third trial. He had the opportunity to present evidence and make arguments with respect to each issue. There is no reasonable probability that the outcome of the trial would have been different had any or all of the evidence been discovered earlier.

For the foregoing reasons, the state court decision was neither contrary to nor an unreasonable application of federal law. The Court of Appeals accurately set forth the standard

applicable to Petitioner's claims and appropriately applied the controlling legal principles to the facts. It is therefore recommended that Petitioner's first, second, and third claims be denied.

## B. Prosecutorial Misconduct (Ground IV)

Petitioner's fourth ground for relief alleges that the prosecutor engaged in misconduct by: (1) suppressing the Montgomery letter; (2) failing to raise the victim's potential gang affiliation as an issue during the initial investigation of the case, before the grand jury, or at trial; and (3) falsely indicating that Petitioner shot the victim in the back with the intention to kill. [Doc. 1]. For the reasons that follow, the Court recommends that Petitioner's fourth habeas claim be denied.

The United States Supreme Court has said that to be actionable on habeas, prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting Bagley, 473 U.S. at 676). The Court has stated that a habeas petitioner seeking relief based on a prosecutor's argument must establish that the prosecutor's actions were improper and "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Comments by a prosecutor are evaluated in light of the evidence as a whole. Bashor v. Risley, 730 F.2d 1228,

1240 (9th Cir. 1984)(citing Carothers v. Rhay, 594 F.2d 225,
230 (9th Cir. 1979)).

It is permissible for a prosecutor to argue all reasonable inferences from evidence in the record. See, e.g., United States v. Young, 470 U.S. 1, 8 n .5 (1985). Moreover, a prosecutor does not overstep the bounds of proper advocacy merely by pointing out potential weaknesses in the defense, or by appropriately responding to defense counsel's arguments. Young, 470 U.S. at 12-14; see also Herring v. New York, 422 U.S. 853, 861-62 (1975). Rather, a prosecutor may "strike hard blows based on the evidence presented and all reasonable inferences therefrom." See United States v. Gwaltney, 790 F.2d 1378, 1385 (9th Cir. 1986).

Here, none of the alleged instances of prosecutorial misconduct rise to the level of a constitutional violation. As explained in connection with Petitioner's Brady claim, defense counsel possessed the Montgomery letter during the third trial. Although the prosecutor initially denied that any deals with Montgomery existed, the prosecutor acknowledged his mistake once defense counsel discovered that another prosecutor had made an offer to Montgomery. [Doc. 18, Exh. Q at 15-17]. Moreover, the prosecutor acquiesced to the remedy proposed by the defense. [Id.]. Petitioner was then permitted to present evidence and make arguments relating to the "Montgomery deal." [Id. at 21-32; Doc. 18, Exh. Z at 5]. Petitioner's right to a fair trial was thereby protected.

Additionally, Petitioner's constitutional rights were not violated by the prosecutor's failure to explore the victim's

alleged gang affiliations.  The Fourteenth Amendment does not impose upon the states the requirement to charge by indictment.  <u>Hurtado v. California</u>, 110 U.S. 516, 538 (1884). <u>See also</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 467, n.3, 499 (2000); <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994). Accordingly, the State was not required to proceed before a grand jury at all, let alone on the grounds now urged by Petitioner.  <u>Id.</u>  Because Petitioner's allegations that the prosecutor engaged in misconduct in connection with developing charges and proceeding before the grand jury do not arise out of federal law, Petitioner's claim is not cognizable. <u>Hurtado</u>, 110 U.S. at 538.  <u>See also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (recognizing that federal courts conducting habeas review are limited to "deciding whether a conviction violated the Constitution, laws or treaties of the United States"); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991)(holding that habeas relief does not extend to errors of state law); 28 U.S.C. § 2254(a)(stating that a petition for writ of habeas corpus shall be entertained only if the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States").

Likewise, the prosecutor was not required to present evidence of the victims' alleged involvement in gang activities at trial.  The prosecutor's position was that Petitioner precipitated the attack against the victim. Pursuant to this theory, the victim's alleged gang affiliations were irrelevant.  The prosecutor was not required to advance Petitioner's contrary theory of the case.

Moreover, Petitioner was permitted to develop his theory that he acted in self-defense. Petitioner testified about his personal experience with gangs and about his belief that he was confronting members of a gang at the time of the shooting. [Doc. 18, Exh. T].   He further presented expert testimony regarding characteristics of the gang culture.  [Doc. 18, Exh. V at 54-162].  The jury therefore had sufficient information to consider Petitioner's theory notwithstanding any prosecutorial omissions.  Petitioner's was not deprived of a fair trial.

Finally, the prosecutor did not engage in misconduct by arguing that Petitioner shot the victim in the back or by alleging that Petitioner acted with the intention to kill. The prosecutor was proceeding on a charge of second degree murder.   Various witnesses testified that Petitioner fired multiple shots in the victim's direction. [Doc. 18, Exh. M at 130-135; Exh. N at 35, 74; Exh. O at 31; Exh. S at 129-30]. Petitioner also admitted firing his weapon. [Doc. 18, Exh. T at 77-79].   Additionally, the coroner testified that the bullet entered the rear side of the victim's body and exited through his chest.   [Doc. 18, Exh. M at 4-60].   Even Petitioner's expert, who characterized the victim's wound as, a shot to the "side" rather than to the "back," conceded on cross-examination that the bullet entered "behind the center of his side." [Doc. 18, Exh. N at 79].  Petitioner's expert further testified that he believed the victim was retreating when he was shot. [Id.]  Based on the evidence as a whole, it was reasonable for the prosecutor to infer that Petitioner

intentionally shot the victim in the back.  Young, 470 U.S. at 8 n .5.

For the foregoing reasons, the state court's determination was not contrary to or an unreasonable application of federal law.  The record reflects that none of the alleged instances of prosecutorial misconduct was sufficiently severe to deprive Petitioner of a fair trial.  Greer, 483 U.S. at 765; Bagley, 473 U.S. at 676.  Accordingly, it is recommended that Petitioner's fourth habeas corpus claim be denied.

**C.  Ineffective Assistance of Counsel (Grounds V, VI, VII, VIII, IX, X, XI)**

Petitioner alleges various instances of ineffective assistance of counsel.  Specifically, he asserts that trial counsel was ineffective for: failing to object to the prosecutorial use of testimony from Petitioner's first and second trials (Ground V); failing to discover the "deal" between Tyrone Montgomery and the State (Ground VI); failing to challenge or clarify the testimony of the police detective who interviewed Petitioner after the shooting (Ground VII); urging Petitioner to testify in accordance with the testimony of other witnesses rather than in accordance with his own recollection (Ground IX); and failing to adequately inform Petitioner of the details of a plea agreement (Ground X). Petitioner additionally alleges that his appellate counsel was ineffective in three ways: by failing to challenge the prosecutor's allusions to defendant's post-arrest silence as an admission of guilt (Ground VI); failing to establish that the State's suppression of the Montgomery letter was

prejudicial (Ground VII); and failing to allege prosecutorial misconduct (Ground XI).

A federal Petitioner must satisfy a two-pronged test to prevail on an ineffective assistance of counsel challenge. He must show both that counsel's performance was constitutionally deficient, and that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687-688 (1984). To establish that counsel's performance was deficient, a petitioner is required to show that, "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-688. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Under the prejudice prong, the question is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Counsel's tactical decisions about how to present a defense are not subject to an ineffective assistance of counsel attack. Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001)(stating that "disagreement with trial counsel's tactical decision cannot form the basis for a claim of ineffective assistance of counsel).. See also Strickland, 466 U.S. at 697-90 (recognizing that mere criticism of trial tactics is not sufficient to support a charge of ineffective assistance of counsel); Gustave v. United States, 627 F.2d 901, 904 (9th Cir.

1980) ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation").    Further, a petitioner's conclusory allegations that counsel should have done more to establish his case do not prove that counsel was ineffective.  <u>Shah v. United States</u>, 878 F.2d 1156, 1161 (9th Cir. 1989); <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 298 (3rd Cir. 1991).

The standard for assessing the performance of trial and appellate counsel is the same.  <u>Morrison v. Estelle</u>, 981 F.2d 425, 427 (9th Cir. 1992); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433-34 (9th Cir. 1989).  Petitioner must establish both that his attorney acted in an objectively unreasonable fashion, and that he was prejudiced thereby.  <u>Strickland</u>, 466 U.S. at 687-88.   In the appellate context, prejudice is established by demonstrating a reasonable probability that, but for his counsel's errors, the result of the appeal would have been different.  <u>Strickland</u>, 466 U.S. at 694; <u>Morrison</u>, 981 F.2d at 427; <u>Miller</u>, 882 F.2d at 1433-34.

**1. Failure to Object to Use of Prior Testimony (Ground V)**

In his fifth ground for relief, Petitioner argues that his trial counsel was ineffective for failing to object to the prosecutorial use of his prior testimony.  Petitioner claims that he did not intend to testify at his third trial, and did so only on the advice of counsel. He asserts that he was then unfairly impeached by the prosecution.

The state court rejected Petitioner's arguments.  The Court determined that: counsel did not advise Petitioner to lie, but discussed the realities of the evidence with Petitioner;

- 25 -

Petitioner testified of his own volition; and Petitioner was not improperly impeached. [Doc. 18, Exh. EE at 2-3]. This Court is likewise satisfied that counsel was not ineffective for failing to object to the prosecutor's use of impeachment evidence.

As noted above, ineffective assistance of counsel requires a showing that counsel's performance was both deficient and prejudicial. Strickland, 466 U.S. at 687-688. Although counsel's failure to object may give rise to an ineffective assistance of counsel challenge under some circumstances, an attorney's tactical decision not to object to evidence may also be reasonable. Dubria v. Smith, 224 F.3d 995, 1003-04 (9th Cir. 2000); United States v. Bosch, 914 F.2d 1239, 1244-47 (9th Cir. 1990). Failure to make a meritless objection is neither unreasonable nor prejudicial. Jones v. Smith, 231 F.3d 1227, 1239, n. 8 (9th Cir. 2001); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985).

Under Arizona law, the prosecutor was entitled to impeach Petitioner with his prior inconsistent statements. See Ariz. R. Evid. Rule 613, 801(d)(1)(A), 801 (d)(2)(A); see also, e.g. State v. Sucharew, 66 P.3d 59, 66 (Ariz.App. 2003)(recognizing that a prior inconsistent statement by a witness subject to cross-examination is not hearsay and may be admitted unless the probative value of the statement is substantially outweighed by the risk of unfair prejudice); State v. Cruz, 627 P.2d 689, 691 (Ariz. 1981)(same). Counsel was not required to make a futile argument or meritless objection, notwithstanding Petitioner's contention that the impeachment

was unfair. Jones, 231 F.3d at 1239, n. 8; Boag, 769 F.2d at 1344. The Court therefore recommends that Petitioner's fifth ground for relief be denied.

**2. References to Petitioner's Silence (Ground VI)**

In ground six, Petitioner contends that appellate counsel ineffectively failed to challenge the prosecutor's allusions to defendant's post-arrest silence as an admission of guilt. Specifically, Petitioner contends that the prosecutor improperly implied that he refused to cooperate with authorities upon arrest and concealed incriminating details from Detective Rogers. He claims that appellate counsel should have raised these issues on appeal.

Petitioner raised these issues in his state post-conviction relief petition. The state court rejected Petitioner's claim on grounds that: (1) it was permissible to elicit testimony regarding Petitioner's pre-Miranda[7] silence; (2) Petitioner waived his Miranda rights before speaking with Detective Rogers; and (3) Petitioner had no right to testify selectively and then claim that his right to remain silent was violated. [Doc. 18, Exh. EE, at 1-2].

The State Court decision was consistent with federal law. In Doyle v. Ohio, 426 U.S. 610, 611 (1976), the United States Supreme Court held that it violates due process to use a criminal defendant's post-arrest silence to impeach

---

[7]      Miranda v. Arizona, 384 U.S. 436 (1966).

1  exculpatory statements made by the defendant for the first
2  time at trial.   The Court recognized, however, that:

3      It goes almost without saying that the fact of post-arrest
       silence could be used by the prosecution to contradict a
4      defendant who testifies to an exculpatory version of events
       and claims to have told the police the same version upon
5      arrest. In that situation the fact of earlier silence would
       not be used to impeach the exculpatory story, but rather to
6      challenge the defendant's testimony as to his behavior
       following arrest.

7  Doyle, 426 U.S. 620, n. 11 (citations omitted).  In this case,
8  Petitioner did not offer an exculpatory story for the first
9  time at trial. He instead relied on his post-arrest interview
10 with Detective Rogers as evidence that he fired only two shots
11 at the victim.  He claimed that his statement to Detective
12 Rogers supported his theory of the case.   Under these
13 circumstances, the prosecutor was permitted to challenge
14 Petitioner's testimony by exploring Petitioner's statements to
15 Detective Rogers.   Doyle, 426 U.S. 620, n. 11.   See also
16 Leavitt v. Arave, 383 F.3d 809, 827 (9th Cir. 2004)("when the
17 defendant seeks to convey the impression that he cooperated
18 with the police, the prosecutor can explore facts which
19 suggest that the defendant did not do so").

20     Petitioner's claim should also be rejected  to the extent
21 it can be construed as challenging prosecutorial references to
22 Petitioner's flight from police officers.   In Jenkins v.
23 Anderson, 447 U.S. 231, 238-39 (1980), the United States
24 Supreme Court expressly held that pre-arrest, pre-Miranda
25 silence is admissible for purposes of impeachment.   Post-
26 arrest, pre-Miranda silence is similarly available for
27 impeachment use.   See also Greer, 483 U.S. at 763)(stating
28

that "'absen[t] the sort of affirmative assurances embodied in the <u>Miranda</u> warnings,' the Constitution does not prohibit the use of a defendant's post-arrest silence to impeach him at trial")(quoting <u>Fletcher v. Weir</u>, 455 U.S. 603 (1982)). Thus, the state court's decision regarding Petitioner's pre-<u>Miranda</u> actions and statements is consistent with federal law.

Finally, Defendant's decision to testify opened the door to impeachment.   In <u>Jenkins</u>, the Court recognized that: "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." <u>Jenkins</u>, 477 U.S. at 238. <u>See also</u> <u>Fletcher</u>, 455 U.S. 603 (finding no due process violation where state permitted cross-examination as to post-arrest, pre-<u>Miranda</u> silence when defendant takes the stand).

The state court's decision was consistent with the foregoing principles.   As a result, Petitioner cannot show prejudice from any failure to raise the issue on direct appeal.   Ground VI should be denied.

### 3. The Montgomery Letter (Ground VII)

In ground seven, Petitioner alleges that trial counsel was ineffective for failing to discover and inform him of the "deal" between Tyrone Montgomery and the State. He further alleges that appellate counsel was ineffective for failing to establish prejudice resulting from the State's suppression of the Montgomery letter.   A recitation of the facts surrounding the Montgomery "deal" are found at pages 12 and 13.

The state court rejected Petitioner's claim because the Montgomery letter was discovered before Montgomery testified

and because defense counsel brought the Montgomery matter to the attention of the jury. [Doc. 18, Exh. EE at 3-4]. The Court further noted that Petitioner failed to state the terms of any offer he would have accepted and observed that Montgomery's testimony was favorable to the defense. [Id.].

The state court's decision is consistent with federal law. A failure to investigate a meritorious defense may constitute ineffective assistance of counsel. See, e.g., Hill v. Lockhart, 474 U.S. 52, 59 (1985); Jennings v. Woodford, 290 F.3d 1006, 1019 (9th Cir. 2002). However, a habeas corpus petition must state facts which point to a real possibility of constitutional error. O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). The determination whether a failure to investigate prejudiced the petitioner depends on the likelihood that discovery of the evidence would have changed the outcome of a trial. Hill, 474 U.S. at 59. Here, the Montgomery letter was discovered before the close of Petitioner's trial. The matter was brought to the attention of the trial court and defense counsel's proposed remedy was granted. There is simply no indication that the outcome of the trial would have been different had defense counsel discovered the letter more quickly.

On direct appeal, counsel raised and argued this issue. Petitioner criticizes counsel for not establishing the prejudice prong of the Strickland test. However, there is no likelihood that counsel could establish prejudice because there simply was none associated with the State's alleged suppression of the Montgomery letter.

### 4. Detective Rogers' Testimony (Ground VIII)

In ground eight, Petitioner contends that defense counsel failed to challenge or clarify the testimony of Detective Rogers, who interviewed Petitioner after the shooting. Petitioner contends that Detective Rogers gave an ambiguous answer to defense counsel's inquiry about the number of times Petitioner claimed to have shot his weapon. Petitioner argues that defense counsel should have used the transcript of Petitioner's interview with Detective Rogers to refresh the detective's recollection or to impeach the detective's testimony. [Doc. 1 at 12]. Review of the trial transcript shows defense counsel summarized the report, saying Petitioner told the police he fired twice. Detective Rogers stated he thought the summary was accurate. [Doc. 18, Exh. S at 45-46].

The state court held: "[A]lthough the impeachment was perhaps inartfully done, the court is left with the strong impression that by the time they deliberated, the jury knew petitioner had told Detective Rogers during his interview that he shot the gun two times. There was no prejudice." [Doc. 18, Exh. EE at 3]. Like the trial court, this Court is satisfied that the jury had sufficient information before it to infer that Petitioner told Detective Rogers he fired two shots. In the last trial, Petitioner testified that he recalled firing two shots. In addition, Petitioner questioned the state's criminalist about the number of flare marks on the gun and presented his own expert testimony regarding the significance of the flare marks. This testimony was sufficient to apprise the jury of Petitioner's position.

There is no reasonable probability that the outcome of the trial would have been different had defense counsel questioned Detective Rogers further.   Accordingly, Petitioner has not established the requisite degree of prejudice to establish ineffective assistance of counsel.   <u>Strickland</u>, 466 U.S. at 694.

**5.   Advising Petitioner to Testify Falsely (Ground IX)**

Petitioner asserts in his ninth ground for relief that counsel was ineffective for urging him to testify in accordance with the testimony of other witnesses rather than in accordance with his own recollection.   It appears that Petitioner is referring to his testimony during the second trial that he fired his weapon four times. Specifically, Petitioner contends that he would not have testified that he fired his weapon four times had counsel obtained ballistics evidence or advised Petitioner differently.[8]

The state court reviewed Petitioner's claim in the context of the entire record and determined that counsel merely "discussed the realties of the evidence" with Petitioner, and did not advise him to testify in a particular manner.   [Doc. 18, Exh. EE at 2-3].   The Court further determined that, despite any alleged advice of counsel, Petitioner himself ultimately made the conscious decision to testify and to

---

[8]   During his testimony in the third trial, Petitioner explained to the jury that he previously testified to four shots because "...my attorney said it's going to look like I am lying and so it's best that I go ahead and agree with everybody else..." [Doc. 18, Exh. T at 78-79].

testify falsely. [Id.]. The Court observed that, in his previous two trials, Petitioner not only discussed the number of shots fired, but offered embellished details about the events. [Id.]. Finally, the Court observed that Petitioner "admitted that he would lie if it would help him and his case." [Id.]. In light of these findings, the Court rejected Petitioner's claim. [Id.].

As noted above, the State court's factual findings are entitled to a presumption of correctness that may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has not presented any evidence to overcome the State court's finding that counsel did not advise him to lie, but instead questioned Petitioner's recollection in light of the discrepancies between Petitioner's version of the events and the testimony of other witnesses.

Moreover, Petitioner has not established prejudice flowing from counsel's advice. Petitioner's conviction from the second trial was overturned, and Petitioner was granted a new trial. Therefore, Petitioner suffered no direct prejudice from counsel's alleged errors.

The alleged prejudice in Petitioner's third trial resulted from the prosecutor's ability to impeach Petitioner with his prior inconsistent statements. However, as the trial court pointed out, Petitioner is the one who decided to testify and what he would say. Trial counsel cannot be criticized for allowing his client to testify, as this is a decision that is left to the defendant. Petitioner's theory of the case was that Petitioner fired only two shots, and therefore, may not

have been the shooter. Counsel sought to corroborate this theory by establishing that Petitioner reported firing only two shots when interviewed after the shooting and by introducing evidence that only two flare marks were found on Petitioner's gun. Counsel's strategic decision is not subject to an ineffective assistance of counsel attack. Strickland, 466 U.S. at 697-90; Wildman, 261 F.3d at 839; Gustave, 627 F.2d at 904.

Finally, the prosecution presented overwhelming evidence of guilt, including eye-witness testimony that Petitioner fired his weapon in the direction of the victim. [Doc. 18, Exh. M at 130-135; Exh. N at 35, 74; Exh. O at 31; Exh. S at 129-30]. Petitioner himself admitted firing his weapon. [Doc. 18, Exh. T at 77-79]. The evidence further established that the victim was shot while retreating. [Doc. 18, Exh. M at 4-60; Exh. N at 79]. There was no evidence at trial that anyone else was firing at the victim. Even assuming that counsel's actions were objectively unreasonable, there is no reasonable probability that the omission of the impeachment evidence presented by the prosecution would have produced a different result. Accordingly, the state court's finding that Petitioner failed to establish prejudice comports with federal law.

## 6. Plea Agreement Details (Ground X)

In ground ten, Petitioner argues that trial counsel was ineffective for failing to inform Petitioner about the details of a plea agreement offered on the second day of Petitioner's third trial. Petitioner testified that his lawyer told him

- 34 -

there was a plea offer but did not tell him the terms. The Superior Court held an evidentiary hearing with respect to this issue. After hearing testimony from Petitioner, defense counsel, and the prosecutor, the Court denied Petitioner's claim. [Doc. 18, Exh. GG].

As discussed above, state court findings of fact are presumptively correct and may be overcome only by a showing of clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Petitioner offers only self-serving statements in support of his claim. [Doc. 1 at 14]. Petitioner's assertions stand in contrast to defense counsel's testimony that he communicated all plea offers to Petitioner and Petitioner rejected them. [Doc. 18, Exh. FF at 5, 6, 10, 14, 16, 20, 23-24]. Petitioner's assertions further conflict with the prosecutor's testimony that he would not have offered Petitioner a more favorable plea than had been previously offered and rejected. [Doc. 18, Exh. FF at 25-35]. Petitioner's unsupported statements are insufficient to overcome the state court's findings with respect to this issue. It is therefore recommended that Petitioner's tenth ground for relief be denied.

**7. Failure to Raise Prosecutorial Misconduct on Appeal (Ground XI)**

Finally, Petitioner alleges that his appellate counsel was ineffective for failing to argue that the prosecutor engaged in misconduct by demeaning defense counsel and mischaracterizing the evidence. Petitioner points to the following prosecutorial comments: (1) the prosecutor suggested

that Petitioner and defense counsel were working together to mislead the jury;[9] (2) the prosecutor explained portions of the transcript in an elementary fashion and stated that he was "helping defense counsel with the line"; (3) the prosecutor asked if defense counsel "would like to get on the stand"; (4) the prosecutor insinuated that defense counsel advised Petitioner to lie rather than simply giving poor advice; and (5) the prosecutor repeatedly mischaracterized the evidence by falsely claiming that the victim was shot in the back.   The state court rejected all of Petitioner's claims on grounds that none of the prosecutor's actions rose to the level of prosecutorial misconduct.

There is no indication that applying Supreme Court precedent to the facts of this case would warrant a different result than that reached by the state court.   Rather, the record supports the conclusion that the prosecutor's comments did not rise to the level of prosecutorial misconduct.   Both the prosecution and the defense engaged in spirited argument throughout the trial.  When taken in context, the prosecutor's comments about helping defense counsel with a line and

[9]   In Petitioner's state petition for post-conviction relief, Petitioner asserted that the prosecutor insinuated that it was appropriate to physically obstruct the line of vision between defense counsel and Petitioner "given some of the testimony from the stand." [Doc. 18, Exh. CC at 19].   Even assuming impropriety on the part of the prosecutor, Petitioner's claim fails.  Any prejudice resulting from this comment was outweighed by the overwhelming evidence of guilt.  The comment was not sufficiently prejudicial to deprive Petitioner of a fair trial.

inquiring whether defense counsel would like to take the stand were clearly sarcastic and adversarial. They were not, however, egregious enough to deprive the defendant of a fair trial. [See Doc. 18, Exh. T at 93-96; Doc. 18, Exh. U at 19-20].

Nor do the prosecutor's comments about defense counsel's advice to Petitioner rise to the level of prosecutorial misconduct. Petitioner himself testified that his testimony in his second trial was contrary to his recollection of the events. [Doc. 18, Exh. U at 7-9]. Petitioner further testified that he changed his story based on defense counsel's advice. [Id.]. The prosecutor could permissibly impeach Petitioner with his prior inconsistent statements. See Ariz. R. Evid. Rule 613, 801(d)(1)(A), 801 (d)(2)(A); Cruz, 627 P.2d at 691; Sucharew, 66 P.3d at 66. Any characterization of Petitioner's statements as a "lie" would be a reasonable inference, and would not so infect the trial with unfairness as to deprive Petitioner of a fair trial. See, e.g., Young, 470 U.S. at 8 n .5 (recognizing that it is permissible for a prosecutor to argue all reasonable inferences from evidence in the record).

Further, as previously discussed in connection with claim four, the prosecutor's suggestion that the victim was shot in the back was reasonable in light of the record. The prosecutor could permissibly point out potential weaknesses in the defense and respond to defense counsel's arguments. Young, 470 U.S. at 12-14; Herring, 422 U.S. at 861-62. The prosecutor's argument was proper. Id.

Finally, even if the prosecutor's arguments could be considered improper, in light of the other evidence of guilt presented at trial, the state court could properly conclude that the comments did not so infect the trial with unfairness as to amount to a denial of due process. Because Petitioner's prosecutorial misconduct arguments lack merit, Petitioner cannot establish prejudice from appellate counsel's failure to raise these issues on appeal. <u>Jones</u>, 231 F.3d at 1239, n. 8; <u>Boag</u>, 769 F.2d at 1344. Petitioner's eleventh claim for relief should therefore be denied.

## CONCLUSION AND RECOMMENDATION

Each of Petitioner's eleven claims lacks merit. Petitioner is not entitled to habeas corpus relief. For the reasons set forth above,

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [Doc. 1] be **denied.**

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal filed pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's order and judgment. The parties shall have ten (10) days from the date of service of this Report and Recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the

factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's Report and Recommendation.

DATED this 4th day of December, 2006.

Virginia A. Mathis
United States Magistrate Judge